FILED
RICHARD W. NAGEL
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

2018 JUL 20 PM 3: 16

2:18cv711

| | |
|---|---|
| CHARLES P. COOK<br>2240 Sunbury Road<br>Columbus, Ohio 43219,<br>on behalf of himself and all others similarly situated<br><br>and<br><br>ROBERT J. ROSEN<br>6030 Eden Valley Drive<br>Westerville, Ohio 43081,<br>on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>GORDON FLESCH CO., INC.<br>c/o Thomas G. Flesch<br>2030 Dividend Drive<br>Columbus, Ohio 43228,<br><br>    Defendant. | Case No.<br><br>JUDGE _____ "Judge Marbley"<br><br>COMPLAINT (MAGISTRATE JUDGE VASCURA<br>ENDORSED HEREON) |

NOW COME Plaintiffs Charles P. Cook and Robert J. Rosen, by and through their attorneys, and for their Complaint hereby aver, allege and pray:

### PARTIES AND JURISDICTION

1. Charles P. Cook is a citizen and resident of Columbus, Ohio. Cook was employed by Defendant in Franklin County, Ohio.

2. Robert J. Rosen is a citizen and resident of Westerville, Ohio. Rosen was employed by Defendant in Franklin County, Ohio.

3. Defendant Gordon Flesch Co., Inc. is a corportion organized under the laws of

CL2:434540_v2

2:18 cv 8 711

"Judge Marbley"

MAGISTRATE JUDGE VASCURA

Wisconsin with its principal place of business in Madison, Wisconsin and its principal place of business in Ohio in Columbus, Ohio.

4. This Court has jurisdiction, pursuant to 28 U.S.C. §1331, because this case involves federal questions (age discrimination under the Age Discrimination in Employment Act, race and religious discrimination under Title VII, retaliation for reporting sex harassment under Title VII, and disability discrimination under the Americans with Disabilities Act.) The Court also has jurisdiction, pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this is a civil action between citizens of different states. Finally, the Court has jurisdiction over Plaintiffs' state claims pursuant to the Court's supplemental jurisdiction in 28 U.S.C. §1367 (in addition to diversity jurisdiction).

5. Pursuant to 28 U.S.C. §1391, venue is proper in this Court because a substantial part of the alleged events and omissions giving rise to Plaintiffs' claims occurred within this judicial district and because Franklin County is where Plaintiffs performed services for Defendant.

## THE DISPUTE

6. This is: (1) A collective action for age discrimination under the ADEA; (2) an action for age discrimination under Ohio Revised Code Chapter 4112 (to be the subject of a motion to consolidate opt-ins' claims with Cook's and Rosen's claims); (3) Cook's Title VII and Ohio Revised Code Chapter 4112 individual claims for race discrimination and for retaliation (for reporting sexual harassment); and (4) Rosen's Title VII, ADA and Ohio Revised Code Chapter 4112 individual claims for religious discrimination (Jewish) and disability discrimination (diabetic, high blood pressure, anxiety/depression).

7. Plaintiffs seek collective action certification, damages, liquidated damages,

2

punitive damages, costs, and attorneys' fees from Defendant for its wrongful and unlawful acts.

## FACTUAL ALLEGATIONS

8. Cook was employed by Defendant from June 1989, beginning as a Copier Sales Representative, until July 27, 2017, when he was terminated from his position as a Senior Account Executive – a period of 28 years. At the time he was terminated, Cook was 50 years old.

9. Rosen was employed by Defendant from December 1990, beginning as a Facsimile Specialist/Sales, until July 27, 2017, when he was terminated from his position as a Major Account Manager – a period of 26 ½ years. At the time he was terminated, Rosen was 50 years old.

10. Sales numbers are the overwhelming, most stressed aspect of sales jobs at Gordon Flesch. Sales being the overwhelming, most stressed aspect of sales jobs at Gordon Flesch is reflected, among other ways, by the Company's constant feedback, tracking and ranking of its salespeople; and by frequent incentives and rewards, such as reward vacations/trips.

11. Cook was an excellent performer, and he received numerous Company rewards. Even when he was terminated in July 2017, Cook was between the 5th and 7th sales performer in the Columbus branch (out of 18 salespeople) and upon information and belief in the top third to top half of all sales performers in the Company. Cook was also a better perfomer than significantly younger sales employees -- who despite being poorer performers than Cook, were neither terminated nor even threatened with termination. Cook was also the only black sales employee in the Columbus office, and the only Columbus employee who had complained about sexual harassment of a co-worker to management.

12. Rosen was an even better performer, and he received numerous Company

3

rewards, including a paid trip to Ireland in 2015. Even when he was terminated in July 2017, Rosen was the #4 sales performer in the Columbus branch (out of 18) and upon information and belief in the top third to top half of all sales performers in the Company. Rosen was also a better perfomer than significantly younger sales employees -- who despite being poorer performers than Rosen, were neither terminated nor even threatened with termination. Rosen was also one of only two Jewish employees in the Columbus office and, to his knowledge, the only disabled employee in the Columbus office.

13. Because Cook and Rosen would not quit despite long-term efforts to make things miserable for them, the Company fired them – despite their excellent performance – using alleged subjective complaints about their attitude and similar aspects of their performance instead of their objective performance numbers.1 The Company used those subjective complaints, despite Cook's and Rosen's excellent (objective) sales numbers, as a pretext to hide the Company's discriminatory animus.2 Non-protected sales employees engaged in conduct substantially-similar to what Cook and Rosen were blamed and terminated for, but those non-protected sales employees were not disciplined (let alone terminated).

14. Defendant's animus was also reflected by management's discriminatory comments (ageist and anti-Semetic comments) and treatment (including but not limited to actively soliciting complaints against protected employees, requiring protected employees to pay back their draws and openly ridiculing protected employees.) Non-protected employees were not subject to such comments or treatment.

---

1 Those subjective complaints include, but are not limited to: Internal reporting and emailing, not talking enough, for losing a customer through no fault of his own, and taking an occasional personal phone call – things non-protected, less successful sales employers did as much or more than Cook or Rosen.
2 Cook's and Rosen's objective performance numbers were actually far lower than they would have been absent Defendant's animus. Defendant took their best, long-term clients, gave those best clients to non-protected sales people, and left Cook and Rosen with the proverbial "crumbs" and/or gave them the clients nobody else wanted. Nevertheless, Rosen and Cook still performed 4th and 5th – 7th out of the 18 sales people in the Columbus office and the top 1/3 to top 1/2 of the entire Company.

4

15. Defendant's race and retaliatory animus was also reflected in terminating the only Columbus sales employee who was black and the only Columbus employee who complained about sexual harassment.

16. The Company's anti-Semetic and disability animus was also reflected in management's anti-Semitic comments and its derogatory comments to and/or about Rosen about his health condition.

17. The Company's animus against Rosen was also reflected in employee admissions that management wanted to get rid of Rosen but was having difficulty because Rosen kept succeeding where nobody else could have.

18. The Company's animus against older employees was not limted to sales employees. As with sales employees, the Company terminated older non-sales employees with good performance (based on objective measures) through pretextual subjective complaints and criticisms. Like Cook and Rosen, the older non-sales employees were good performers based on objective measures including but not limited to rankings, rewards and evaluations. Nevertheless, like Cook and Rosen, the Company trumped-up false, pretextual subjective complaints to terminate older (non-sales) employees from the Company.

## ADEA COLLECTIVE ACTION ALLEGATIONS

19. Plaintiffs bring Count One (ADEA) of this action on their own behalf, pursuant to 29 U.S.C. 216(b) and 626(b), and on behalf of all other persons similarly-situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

20. The class which Plaintiffs seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs are themselves members, are composed of and defined as follows:

5

> All individuals employed by Gordon Flesch Co., Inc. at any time between July 20, 2015 and the present, who were 40 years or older, and were terminated based on subjective complaints and criticisms -- anything besides purely objective measures.

21. Plaintiff is unable to state at this time the exact size of the potential class, but upon information and belief, avers that it consists of at least 25 people.

22. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. 216(b) and 626(b), as to claims for economic damages, liquidated damages, attorneys' fees and costs under the ADEA. In addition to Plaintiffs, numerous employees are similarly situated with regard to being terminated after hitting age 40 for subjective reasons. Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as Plaintiffs' own interests in bringing this action.

23. Those similarly-situated employees are known to Defendant and are readily identifiable through Defendant's sales and personnel records. Those individuals may readily be notified of this action, and allowed to opt-in pursuant to 29 U.S.C. §216(b), for the purpose of collectively adjudicating their claims for age discrimination – including economic damages, liquidated damages, attorneys' fees and costs under the ADEA.

## COUNT ONE
## AGE DISCRIMINATION IN EMPLOYMENT ACT

24. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 18 of their Complaint as if fully rewritten herein.

25. Defendant is an employer under the ADEA and was Cook's and Rosen's employer during all times relevant hereto.

26. Plaintiffs were qualified for their jobs at all times.

27. Defendant discriminated against Plaintiffs (in the manners described in Paragraphs 8 through 18, including terminating their employment because they were over 40.

6

28.  As a proximate result of Defendant's discrimination, Plaintiffs have suffered economic loss. Plaintiffs are also entitled to costs and attorneys' fees on their ADEA claims by statute.

29.  Defendant's age discrimination described herein was done willfully, entitling Plaintiffs to liquidated damages.

30.  Plaintiffs timely filed this suit within 90 days of receiving notices of right to sue from the EEOC.

## COUNT TWO
## AGE DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE §4112.14

31.  Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 30 of their Complaint as if fully rewritten herein.

32.  Defendant is an employer under Ohio Revised Code Chapter 4112 and was Cook's and Rosen's employer during all times relevant hereto.

33.  Plaintiffs were qualified for their jobs at all times.

34.  Defendant discriminated against Plaintiffs (in the manners described in Paragraphs 8 through 18, including terminating their employment) because they were over 40.

35.  As a proximate result of Defendant's discrimination, Plaintiffs have suffered economic loss. Plaintiffs are also entitled to costs and attorneys' fees on their §4112.14 claim by statute.

36.  Plaintiffs timely filed this suit within six years of the events at issue.

## COUNT THREE
## TITLE VII RACE DISCRIMINATION (BY COOK ONLY)

37.  Cook incorporates by reference the allegations in Paragraphs 1 through 17 of the Complaint as if fully rewritten herein.

38.  Defendant is an employer under Title VII and was Cook's employer during all

times relevant hereto.

39. Cook was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

40. Defendant discriminated against Cook (in the manners described in Paragraphs 8 through 17, including terminating his employment) because Cook is black.

41. As a proximate result of Defendant's discrimination, Cook has suffered economic loss and emotional distress damages. Cook is also entitled to costs and attorneys' fees on his Title VII claim by statute. Furthermore, Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Cook to punitive damages.

42. Cook timely filed this suit within 90 days of receiving his notice of right to sue from the EEOC.

## COUNT FOUR
## TITLE VII SEX DISCRIMINATION RETALIATION (BY COOK ONLY)

43 Cook incorporates by reference the allegations in Paragraphs 1 through 17 of the Complaint as if fully rewritten herein.

44. Defendant is an employer under Title VII and was Cook's employer during all times relevant hereto.

45. Cook was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

46. Defendant retaliated against Cook (in the manners described in Paragraphs 8 through 17, including terminating his employment) because he complained to management about the sexual harassment of a co-worker.

47. As a proximate result of Defendant's retaliation, Cook has suffered economic loss and emotional distress damages. Cook is also entitled to costs and attorneys' fees on his Title

VII claim by statute. Furthermore, Defendant's retaliation described above was done with ill-will, malice, and bad faith, etc. – entitling Cook to punitive damages.

48. Cook timely filed this suit within 90 days of receiving his notice of right to sue from the EEOC.

## COUNT FIVE
## REVISED CODE §4112.02 RACE DISCRIMINATION (BY COOK ONLY)

49. Cook incorporates by reference the allegations in Paragraphs 1 through 17 and Paragraphs 36 through 41 of the Complaint as if fully rewritten herein.

50. Defendant is an employer under Revised Code Chapter 4112 and was Cook's employer during all times relevant hereto.

51. Cook was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

52. Defendant discriminated against Cook (in the manners described in Paragraphs 8 through 17, including terminating his employment) because Cook is black.

53. As a proximate result of Defendant's discrimination, Cook has suffered economic loss and emotional distress damages. Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Cook to punitive damages, costs and attorneys' fees on his §4112.02 claim.

54. Cook timely filed this suit within six years of the events at issue.

## COUNT SIX
## REVISED CODE §4112.02 SEX DISCRIMINATION RETALIATION (BY COOK ONLY)

55. Cook incorporates by reference the allegations in Paragraphs 1 through 17 and Paragraphs 42 through 47 of the Complaint as if fully rewritten herein.

56. Defendant is an employer under Revised Code Chapter 4112 and was Cook's employer during all times relevant hereto.

9

57. Cook was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

58. Defendant retaliated against Cook (in the manners described in Paragraphs 8 through 17, including terminating his employment) because he complained to management about the sexual harassment of a female co-worker.

59. As a proximate result of Defendant's retaliation, Cook has suffered economic loss and emotional distress damages. Defendant's retaliation described above was done with ill-will, malice, and bad faith, etc. – entitling Cook to punitive damages, costs and attorneys' fees on his §4112.02 claim.

60. Cook timely filed this suit within six years of the events at issue.

## COUNT SEVEN
## TITLE VII RELIGIOUS DISCRIMINATION   (BY ROSEN ONLY)

61. Rosen incorporates by reference the allegations in Paragraphs 1 through 17 of the Complaint as if fully rewritten herein.

62. Defendant is an employer under Title VII and was Rosen's employer during all times relevant hereto.

63. Rosen was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

64. Defendant discriminated against Rosen (in the manners described in Paragraphs 8 through 17, including terminating his employment) because Rosen is Jewish.

65. As a proximate result of Defendant's discrimination, Rosen has suffered economic loss and emotional distress damages. Rosen is also entitled to costs and attorneys' fees on his Title VII claim by statute. Furthermore, Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Rosen to punitive damages.

10

66. Rosen timely filed this suit within 90 days of receiving his notice of right to sue from the EEOC.

## COUNT EIGHT
## ADA DISABILITY DISCRIMINATION (BY ROSEN ONLY)

67. Rosen incorporates by reference the allegations in Paragraphs 1 through 17 of the Complaint as if fully rewritten herein.

68. Defendant is an employer under ADA and was Rosen's employer during all times relevant hereto.

69. Rosen was a qualified individual with disabilities (diabetic, high blood pressure, anxiety/depression) at all times (and as mentioned above, was an excellent performer.)

70. Defendant discriminated against Rosen (in the manners described in Paragraphs 8 through 17, including terminating his employment) because he was disabled and perceived as disabled by Defendant.

71. As a proximate result of Defendant's discrimination, Rosen has suffered economic loss and emotional distress damages. Rosen is also entitled to costs and attorneys' fees on his ADA claim by statute. Furthermore, Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Rosen to punitive damages.

72. Rosen timely filed this suit within 90 days of receiving his notice of right to sue from the EEOC.

## COUNT NINE
## REVISED CODE §4112.02 RELIGIOUS DISCRIMINATION (BY ROSEN ONLY)

73. Rosen incorporates by reference the allegations in Paragraphs 1 through 17 and Paragraphs 60 through 65 of the Complaint as if fully rewritten herein.

74. Defendant is an employer under Revised Code Chapter 4112 and was Rosen's employer during all times relevant hereto.

11

75. Rosen was qualified for his jobs at all times (and as mentioned above, was an excellent performer.)

76. Defendant discriminated against Rosen (in the manners described in Paragraphs 8 through 17, including terminating his employment) because Rosen is Jewish.

77. As a proximate result of Defendant's discrimination, Rosen has suffered economic loss and emotional distress damages. Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Rosen to punitive damages, costs and attorneys' fees on his §4112.02 claim.

78. Rosen timely filed this suit within six years of the events at issue.

## COUNT TEN
## REVISED CODE §4112.02 DISABILITY DISCRIMINATION (BY ROSEN ONLY)

79. Rosen incorporates by reference the allegations in Paragraphs 1 through 17 and Paragraphs 66 through 71 of the Complaint as if fully rewritten herein.

80. Defendant is an employer under Revised Code Chapter 4112 and was Rosen's employer during all times relevant hereto.

81. Rosen was a qualified individual with disabilities (diabetic, high blood pressure, anxiety/depression) at all times (and as mentioned above, was an excellent performer.)

82. Defendant discriminated against Rosen (in the manners described in Paragraphs 8 through 17, including terminating his employment) because he was disabled and was perceived as disabled by Defendant.

83. As a proximate result of Defendant's discrimination, Rosen has suffered economic loss and emotional distress damages. Defendant's discrimination described above was done with ill-will, malice, and bad faith, etc. – entitling Rosen to punitive damages, costs and attorneys' fees on his §4112.02 claim.

84. Rosen timely filed this suit within six years of the events at issue.

WHEREFORE, Plaintiffs pray:

1. That the Court issue an order permitting this litigation to proceed as an ADEA collective action and order prompt notice, pursuant to 29 U.S.C. §216(b), to all class members that this litigation is pending and that they have the right to "opt-in" to this litigation.

2. That the Court award damages to Plaintiffs and against Defendant, in an amount to be fully determined at trial but more than $750,000.

3. That the Court award liquidated damages to Plaintiffs and against Defendant, in an amount to be fully determined at trial but more than $750,000.

4. That the Court award Plaintiffs their non-economic damages for emotional distress (on their non-age claims, which permit emotional distress damages).

5. That the Court award Plaintiffs punitive damages (on their non-age claims, which permit punitive damages), pre-judgment and post-judgment interest, reasonable costs and attorneys' fees, and such other and further relief as it deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ David M. Benson
David M. Benson (0062540) *(admission pending)*
970 Hanna Building
1422 Euclid Avenue
Cleveland, OH 44115
Telephone: 216.241.2510
Facsimile: 216.241-2510
david@davidbensonlaw.com

*Trial Attorney for Plaintiffs*

CL2:455641_v1

13